Guy James HATHAWAY,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. CO–88–274.

Supreme Court of Minnesota.

Jan. 20, 1989.

Paul Engh, Minneapolis, for appellant.

Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

COYNE, Justice.

This is an appeal by petitioner Guy James Hathaway from an order of the district court denying his petition for postconviction relief from his 1984 conviction of first-degree murder. Petitioner makes two basic arguments in support of his contention that he should be given a new trial: first, that his former attorneys did not represent him effectively either at trial or in his 1985 direct appeal, in which we affirmed his conviction; and second, that he has discovered new evidence. We affirm.

On Sunday, October 24, 1982, three armed men wearing masks attempted to rob the pharmacy at Mounds Park Hospital in St. Paul. When a hospital security guard, off-duty police officer Richard Walton, responded to a pharmacist's call for help, one of the masked men exchanged shots with Walton. Walton was struck in the head and fatally wounded. Tips from informants led the police to two men, William Dwyer and Timothy Eling. Dwyer was arrested and told police that he had accompanied Eling, Harold Gustafson and petitioner to the hospital on Friday, October 22, 1982, as part of a plan to rob the pharmacy but that they had called off the attempt at the last moment. Eling was arrested on Wednesday, October 27, 1982, and taken to a hospital for treatment of gunshot wounds in the lower right leg, wounds that resulted from shots fired by the security guard, Walton. Meanwhile, Gustafson and petitioner fled the scene in order to avoid apprehension.

Eling was convicted by a jury of first-degree murder. We affirmed his conviction in *State v. Eling*, 355 N.W.2d 286 (Minn. 1984).

Gustafson and petitioner were arrested by F.B.I. agents in California in 1984. Af-

ter being jointly tried, they both were convicted of first-degree murder. The evidence linking petitioner to the crime is set forth in detail in our decision in *State v. Hathaway*, 379 N.W.2d 498 (Minn.1985), where we affirmed petitioner's conviction on direct appeal.[1] The evidence of petitioner's guilt included (a) testimony of petitioner's association with Eling; (b) testimony by William Dwyer, the accomplice to the aborted robbery attempt on Friday, October 22; (c) testimony by George Leslie, who participated with Eling, Gustafson and petitioner in planning the robbery on Sunday, October 24, but decided against participating in the robbery because he considered it too risky; (d) testimony of several hospital employees that they had seen petitioner in the hospital during the week preceding the murder (apparently when petitioner was "casing" the place); and (e) evidence that Gustafson and petitioner had assumed false names during the period when they were fugitives.

Petitioner did not testify at trial. The strategy of petitioner's attorneys was to cast doubt on the testimony of Dwyer and Leslie and suggest that they, rather than Gustafson and petitioner, participated with Eling in the commission of the crime. In support of this strategy, they called Eling, who testified that it was Dwyer and Leslie, not Gustafson and petitioner, who were with him.

■ 1. Petitioner makes a number of allegations in connection with his contention that he was denied effective assistance of counsel. Specifically, he alleges that his trial attorneys negligently (a) failed to investigate the impaneling of the grand jury which indicted him, (b) failed to interview or call certain witnesses, and (c) failed to provide any defense. He further alleges that the attorney who represented him on direct appeal did not represent him adequately.

The two leading cases dealing with this issue are *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). As we said in *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987):

These cases set forth a two-part test that postconviction courts and appellate courts must apply in determining whether to grant a defendant a new trial on the ground of ineffective assistance of counsel. The defendant must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064–2068 * * *. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694 * * *.

A careful review of the record on this appeal satisfies us that the postconviction court correctly applied this two-part test and properly denied postconviction relief on this ground.[2]

---

**1.** We affirmed Gustafson's conviction in *State v. Gustafson*, 379 N.W.2d 81 (Minn.1985).

**2.** Petitioner also alleges that the request of his trial attorneys that he sign certain financial documents during trial may have affected the quality of their representation. It appears that during the course of the trial petitioner and his fiancee signed a promissory note in the amount of the attorneys' fees. The note was secured by a mortgage on real property acquired by petitioner's fiancee on the day the note and mortgage were executed. The fiancee was represented by counsel, and she had an opportunity to have her counsel review the mortgage documents before signing them. One cannot fairly characterize trial counsel's request as "overreaching" because they did not demand additional fees or threaten to end their representation of petitioner if he and his financee did not cooperate. The note and mortgage were designed to secure payment only of the fee on which the parties had agreed before trial. The transaction did not affect the quality of the representation petitioner received. Nevertheless, it should be apparent that requiring or even requesting the client to sign papers such as this in the midst of a trial in which the client's liberty is at stake is an unseemly way to assure payment of fees. For a discussion of ethical standards relating to fees of criminal defense attorneys, see I ABA Standards for Criminal Justice, Standard 4–3.3 (2d ed. 1980 & Supp. 1986).

2. The new evidence which petitioner claims entitles him to a new trial is testimony petitioner argues would have been admissible to impeach the testimony of Leslie, who helped plan the robbery on Sunday, October 24, but then decided against participating in it. During cross-examination by counsel for Gustafson, Leslie testified that he had "briefly" handled guns in the past. The new evidence is the testimony of Fredward Coney, who would testify that he was with Leslie during the commission of a crime in Florida in which Leslie used a gun to threaten the victim.

Recently, in *Race v. State*, 417 N.W.2d 264, 266 (Minn.1987), we said:

> Generally, in order to obtain a new trial on the ground of newly discovered evidence, the defendant must establish (1) that the evidence was not known to him or his counsel at the time of trial, (2) that his failure to learn of it before trial was not due to lack of diligence, (3) that the evidence is material (or, as we have sometimes said, is not impeaching, cumulative or doubtful), and (4) that the evidence will probably produce either an acquittal at a retrial or a result more favorable to the petitioner. [Citations omitted.] The decision whether to grant a new trial based upon a claim of newly discovered evidence rests in the first instance with the trial court and we will not disturb the decision unless there is an abuse of discretion. [Citation omitted.]

We conclude that the postconviction court did not abuse its discretion in determining that petitioner is not entitled to a new trial on this ground.

AFFIRMED.