**Michael Calvin FRANCIS, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A12–1225.**

Supreme Court of Minnesota.

April 24, 2013.

See also 669 F.Supp.2d. 970.

Michael C. Francis, Rush City, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Lee W. Barry, Assistant County Attorneys, Minneapolis, MN, for respondent.

## OPINION

WRIGHT, Justice.

Michael Calvin Francis seeks postconviction relief from his convictions arising from the shooting of M.P. and the death of P.R. The postconviction court summarily denied Francis's petition on the ground that the petition is time barred under Minn.Stat. § 590.01, subd. 4(a) (2012), because Francis failed to satisfy the newly-discovered-evidence exception in Minn. Stat. § 590.01, subd. 4(b)(2) (2012). Alternatively, the district court denied the petition as barred under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). We affirm because the petition is time barred under Minn.Stat. § 590.01, subd. 4(a)(2), and it fails to satisfy an exception

to the two-year limitations period for filing a postconviction petition.

On the evening of May 24, 2004, M.P. and his girlfriend, P.R., were shot by the driver of a blue Chevrolet Tahoe.[1] P.R. suffered a single gunshot wound to the head and died a few hours after the shooting. M.P. survived the shooting and later identified Francis as the shooter. After police gathered additional evidence linking Francis to the crime, a grand jury returned an indictment charging Francis with first-degree premeditated murder, Minn.Stat. § 609.185(a)(1) (2012), first-degree intentional drive-by shooting murder, Minn.Stat. § 609.185(a)(3) (2012), attempted first-degree premeditated murder, Minn.Stat. § 609.17, subd. 1 (2012), and attempted first-degree intentional drive-by shooting murder, Minn.Stat. § 609.17, subd. 1. The racial composition of the grand jury that indicted Francis was entirely white.

The case proceeded to trial, and the State offered a substantial amount of evidence that Francis was the shooter, including M.P.'s identification of Francis. Francis testified at trial and denied that he shot M.P. or P.R. The jury returned a guilty verdict on each of the charged offenses. The district court subsequently convicted Francis and imposed a sentence of 180 months' imprisonment for the attempted first-degree premeditated murder of M.P. and a consecutive mandatory sentence of life imprisonment for the first-degree premeditated murder of P.R. *See Francis I,* 729 N.W.2d at 589.

Francis filed a direct appeal on February 1, 2005, through appointed appellate counsel. After his appellate brief was filed, Francis discharged his appellate counsel. We granted Francis's motion to proceed pro se and stayed his direct appeal to allow Francis to pursue postconviction relief. In his first petition for postconviction relief, Francis raised numerous claims of error. The postconviction court denied Francis's petition without a hearing, concluding that his claims lacked merit. Francis appealed the denial of his first postconviction petition, after which we vacated the stay of his direct appeal and consolidated the appeals. We affirmed Francis's convictions and the denial of his first petition for postconviction relief on April 5, 2007. *See Francis I,* 729 N.W.2d at 593.

Francis subsequently retained counsel and filed a second petition for postconviction relief on April 3, 2009. The postconviction court summarily denied Francis's petition, holding that his claims were procedurally barred. Francis appealed. We affirmed the denial of Francis's second petition for postconviction relief on May 13, 2010. *Francis v. State (Francis II ),* 781 N.W.2d 892, 898 (Minn.2010).[2]

Almost two years later, on February 10, 2012, Francis filed a third petition for postconviction relief, which is now before us.[3] In this petition and supportive memo-

---

**1.** Because the facts surrounding the shooting of M.P. and the death of P.R. are set forth in detail in *Francis v. State (Francis I ),* 729 N.W.2d 584 (Minn.2007), we limit our facts to those related to this appeal.

**2.** During the period between Francis's consolidated appeal and his second petition for postconviction relief, Francis filed a federal habeas petition. *Francis v. Fabian,* 669 F.Supp.2d 970, 974 (D.Minn.2009). The federal district

court denied Francis's petition for habeas relief on October 23, 2009. *Id.*

**3.** Francis has filed two other petitions that he argues were requests for disclosure, rather than petitions for postconviction relief. In its response to the present petition, the State asserts that this petition is Francis's fifth postconviction petition. The postconviction court did not address these other filings, and because we conclude that Francis's petition is

randum, Francis argued that the grand jury selection process in Hennepin County violated his constitutional rights to due process and equal protection under the law. U.S. Const. amend. XIV, § 1. The United States District Court for the District of Minnesota, which rejected a similar challenge that Francis raised in his federal habeas petition, summarized grand jury selection in Hennepin County as follows:

> Each year approximately 40,000 names are randomly generated by computer from the master source list, which does not contain any race information, to create the master juror list for that year.... One hundred and twenty-five prospective grand jurors are randomly selected by computer from the master list three times a year, and they are summoned and issued a questionnaire which includes a race identification question. After excusals are granted and disqualifications are determined, the first thirty people on the list who have not been excused or disqualified are informed that they must appear for grand jury service on a particular date. Of the thirty people who report for service, the first twenty-three are assigned as jurors and the remaining as alternates.

*Francis v. Fabian,* 669 F.Supp.2d. 970, 983–84 (D.Minn.2009) (citations omitted).

Francis maintained that his current petition for postconviction relief satisfies the interests-of-justice exception, Minn.Stat. § 590.01, subd. 4(b)(5) (2012), to the statutory two-year time limit in section 590.01, subdivision 4(a). After sending a letter to the Hennepin County Jury Division Supervisor in February 2010, Francis claimed he learned that, after juror questionnaires are returned and grand juror disqualification and excuse determinations are made, the

first 23 jurors on the 125–person list who are not disqualified and not excused are assigned to the grand jury panel and that the next seven are assigned as alternates. Francis asserted that from his communications with the Jury Division Supervisor in February 2010, he also discovered that the remaining jurors on the randomly selected list of 125 are excused.

This "newly discovered" information was not contained in Hennepin County's Jury Administration Plan (Plan), and, Francis maintained, was necessary to raise his constitutional claims because it demonstrates that Hennepin County's jury selection process systematically excludes African Americans from its grand juries. Francis also argued that his appointed appellate counsel was ineffective for refusing to bring an ineffective-assistance-of-trial-counsel claim based on trial counsel's "lack of due diligence," which Francis contended was demonstrated by trial counsel's failure to discover the information regarding the Hennepin County grand jury selection process that Francis ultimately obtained from the Jury Division Supervisor in February 2010.

The postconviction court summarily denied Francis's petition for postconviction relief. The postconviction court concluded that the petition is barred under the two-year statute of limitations, Minn.Stat. § 590.01, subd. 4(a), and that the newly-discovered-evidence exception to the statute's time limits, Minn.Stat. § 590.01, subd. 4(b)(2), does not apply. The postconviction court alternatively ruled that the petition is barred under the *Knaffla* doctrine. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741. This appeal followed.

---

time barred, we need not determine whether these other filings were petitions for postconviction relief and therefore provide an additional basis for the summary denial of the current petition.

■ We review the denial of a postconviction petition for an abuse of discretion. *Roby v. State,* 531 N.W.2d 482, 483 (Minn.1995). In doing so, we review findings of fact for clear error, and we review questions of law de novo. *State v. Hokanson,* 821 N.W.2d 340, 357 (Minn.2012).

■ Francis challenges the postconviction court's determination that his petition is untimely and barred by the *Knaffla* doctrine. Francis also asserts that the postconviction court erred when, in evaluating whether his petition was time barred under Minn.Stat. § 590.01, subd. 4(a), it considered his petition under the newly-discovered-evidence exception, Minn.Stat. § 590.01, subd. 4(b)(2), rather than under the interests-of-justice exception, Minn. Stat. § 590.01, subd 4(b)(5). Francis contends that the postconviction court erred because the latter exception is the ground on which he seeks relief from the time bar. The State not only agrees with the bases on which the postconviction court denied postconviction relief as time barred, but also argues that the petition was properly rejected under the newly-discovered-evidence exception. We conclude that even if the postconviction court erred in considering Francis's petition under the newly-discovered-evidence exception in Minn. Stat. § 590.01, subd. 4(b)(2), rather than under the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b)(5), the district court's denial of postconviction relief is legally sound because Francis has failed to satisfy the interests-of-justice exception.

A person convicted of a crime may file a petition for postconviction relief. Minn. Stat. § 590.01, subd. 1 (2012). "Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief," the postconviction court must conduct a hearing. Minn.Stat. § 590.04, subd. 1 (2012). However, a postconviction petition must be filed within two years after the later of "the entry of judgment of conviction or sentence if no direct appeal is filed" or "an appellate court's disposition of petitioner's direct appeal," unless one of the several exceptions to the time limit applies. Minn. Stat. § 590.01, subd. 4(a)-(b).

We affirmed Francis's conviction on direct appeal on April 5, 2007. *Francis I,* 729 N.W.2d at 584. Francis filed his current petition on February 12, 2012, which is well after the time limit for filing a petition for postconviction relief. *See* Minn.Stat. § 590.01, subd. 4(a). Therefore, unless one of the exceptions in Minn. Stat. § 590.01, subd. 4(b) applies, Francis's petition is time barred. To demonstrate that his petition is entitled to review under the statutory exception that he invokes, Francis must "establish[ ] to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn.Stat. § 590.01, subd. 4(b)(5).

■ When determining whether it is in the interests of justice to consider an otherwise time-barred petition for postconviction relief, we may consider several factors. *See Gassler v. State,* 787 N.W.2d 575, 586–87 (Minn.2010). However, "the factors identified in *Gassler* do not form a rigid test" and "[d]ifferent factors may be dispositive in the unique circumstances of each case." *Carlton v. State,* 816 N.W.2d 590, 608 (Minn.2012). In *Rickert v. State,* 795 N.W.2d 236, 242 (Minn.2011), we considered "the degree of fault assigned to the party asserting the interests-of-justice claim." The petitioner in *Rickert* was provided the transcripts needed to substantiate his postconviction claim just two business days before the expiration of the limitations period, even though he had requested the transcripts several months before the expiration of the limitations period. *Id.* On those facts, we concluded that the interests-of-justice requirement had

been satisfied. *Id.* The facts supporting Francis's interests-of-justice claim are readily distinguishable.

It is undisputed that the Plan did not contain the information regarding Hennepin County's grand jury selection process on which Francis now relies to challenge the composition of the grand jury that returned his indictment. But even if we assume this information must be included in the Plan, this information was published in our case law 12 years before the deadline to file Francis's postconviction petition. We described the Hennepin County grand jury selection process in detail in *Hennepin County v. Perry*, 561 N.W.2d 889 (Minn.1997). Our description in *Perry* includes in the following passage the very same aspects of the process that Francis now challenges:

> 125 prospective grand jurors randomly selected from the source list were mailed a summons. The names of these individuals are placed on a list in the order selected. From that list of prospective grand jurors, 12 summonses were undeliverable and 30 individuals were disqualified. From the remaining individuals on the list, the first 23 were sworn in as grand jurors and the next 6 were selected as alternates, and 54 were excused. The race of 98 of the 125 prospective grand jurors was known....

*Id.* at 895 (footnotes omitted); *see also* Minn. R. Gen. Prac. 807 (describing the requirement that potential jurors be mailed a questionnaire and summons and noting that the questionnaire should request information regarding "basic background information," including the race of the potential juror). Francis concedes that he read *Perry* in the course of his legal research conducted in 2005 and 2006. Moreover, when Francis sought information from the Jury Division Supervisor in February 2010, she promptly responded to his requests, doing so approximately two years before Francis filed this postconviction petition. Thus, unlike the facts in *Rickert*, a third party did not delay Francis's access to the information that he relies on for his claim.[4]

In support of the ineffective-assistance-of-appellate-counsel claim that he brings after the limitations period, Francis relies on the same information that he relies on to advance his constitutional challenge to the grand jury selection process after the limitations period. Thus, the reason for the delay in bringing both postconviction claims is attributable to no one other than Francis, who concedes that his research produced the relevant information no later than 2006. On the record before us, Francis has not satisfied the interests-of-justice requirement in Minn.Stat. § 590.01, subd. 4(b)(5).[5]

Affirmed.

---

**4.** We conclude that the consideration of the degree to which Francis is at fault for the untimely filing of his current petition is dispositive in this case, and we therefore need not consider additional *Gassler* factors. *See Carlton*, 816 N.W.2d at 608 (stating that "courts are not required to examine each *Gassler* factor in every case asserting the interests-of-justice exception to Minn.Stat. § 590.01, subd. 4(a)").

**5.** Because our conclusion that Francis fails to meet the interests-of-justice requirement in Minn.Stat. § 590.01, subd. 4(b)(5) is dispositive, we decline to address whether Francis's petition also fails to satisfy Minn.Stat. § 590.01, subd. 4(b)(5), because his petition is "frivolous." For the same reason, we need not consider the postconviction court's determination that Francis's claims are *Knaffla*-barred.