*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1190**

State of Minnesota,
Respondent,

vs.

Brian Jeffrey Copeland,
Appellant.

**Filed September 8, 2014
Affirmed
Schellhas, Judge**

Olmsted County District Court
File No. 55-CR-12-4531

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Frank Arend Schulte, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant argues that his attorney in district court was ineffective and that the district court abused its discretion by refusing to sentence him to a downward dispositional departure. He also raises other arguments pro se. We affirm.

**FACTS**

After respondent State of Minnesota charged appellant Brian Copeland with 11 counts of criminal sexual conduct against M.P., Copeland agreed to plead guilty to two counts of second-degree criminal sexual conduct and one count of third-degree criminal sexual conduct. The state agreed to dismiss the remaining counts. The parties acknowledged that the state would seek a guidelines sentence and that Copeland could seek a downward dispositional departure. At his plea hearing, as factual bases to support his guilty pleas, Copeland admitted that in November 2002, when he was 18 years old and his cousin, M.P., was 11 years old, he touched M.P.'s genitals; that in November 2003, when he was 19 years old and M.P. was 12 years old, he repeated this conduct; and, in November 2008, when M.P. was 17 years old, he penetrated M.P.'s anus with his finger.

The district court denied Copeland's motion for a downward dispositional departure and imposed concurrent sentences of 21 months' imprisonment, 27 months' imprisonment, and 60 months' imprisonment.

This appeal follows.

**D E C I S I O N**

*Claimed Ineffective Assistance of Counsel*

Copeland argues that he received ineffective assistance of counsel in the district court.

> Ineffective-assistance-of-counsel claims are generally analyzed as trial errors under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052 (1984)]. To prevail on a claim

under *Strickland*, an appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors.

*Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013) (quotations omitted), *cert. denied*, 134 S. Ct. 1772 (2014). "Trial counsel's performance is presumed to be reasonable," *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014), and "a party claiming ineffective assistance of counsel must prove both deficient performance and prejudice," *State v. Dalbec*, 800 N.W.2d 624, 627 (Minn. 2011).

"Generally, a direct appeal from a judgment of conviction is not the most appropriate way to raise a claim of ineffective assistance of trial counsel because the reviewing court does not have the benefit of all the facts concerning why defense counsel did or did not do certain things." *Roby v. State*, 531 N.W.2d 482, 484 n.1 (Minn. 1995) (quotation omitted). "The best procedure for raising such a claim . . . is to file a petition for postconviction relief *before* appeal." *McKenzie v. State*, 754 N.W.2d 366, 369 n.3 (Minn. 2008) (quotations omitted). When the record is inadequate to support an appellant's claims, appellate courts may decline to review ineffective-assistance claims on direct appeal. *See, e.g.*, *State v. Christian*, 657 N.W.2d 186, 194 (Minn. 2003); *State v. Coe*, 290 Minn. 537, 537−38, 188 N.W.2d 421, 422 (1971). But, here, we reach the merits of Copeland's ineffective-assistance claim and reject it because, even if his unsupported allegations are true, his arguments are unpersuasive and any postconviction-relief petition based on them would fail as a matter of law. *Cf. Vang*, 847 N.W.2d at 266 ("If the court concludes there are no material facts in dispute that preclude dismissal, and

the State is entitled to dismissal of the [postconviction-relief] petition as a matter of law, the court is not required to hold an evidentiary hearing."); *Hughes v. State*, 815 N.W.2d 602, 605 (Minn. 2012) ("Although we would ordinarily remand for further proceedings in the postconviction court, we conclude that, in light of the specific facts of this case, the interests of judicial economy will be served by our consideration of the merits of Hughes's restitution claims."), *cert. denied*, 133 S. Ct. 856 (2013).

Many of Copeland's factual assertions are not supported by the record. Copeland argues that his attorney provided ineffective assistance in connection with his guilty plea, but the only record facts on which he relies are that (1) his attorney represented him at the plea hearing when she was not the attorney with whom he primarily prepared for the hearing and (2) his attorney did not request a continuance. Without record support, he alleges that his prior attorney advised him to plead not guilty but that, during a four-minute pre-hearing discussion, his new attorney used "scare tactics" to convince him to plead guilty. Copeland's assertions are belied by the fact that, at the plea hearing, he acknowledged that he had discussed with his prior attorney whether to plead guilty and that his new attorney was simply "helping [him] enter this plea[,] . . . kind of finaliz[ing] things." He also acknowledged that he had not come to court with the expectation that he would go to trial the next week and that he had been thinking about pleading guilty for a while. Although Copeland argues on appeal that he was coerced into pleading guilty, nothing in the record suggests that his answers at the plea hearing were a result of improper pressure or coercion. *Cf. State v. Raleigh*, 778 N.W.2d 90, 96 (Minn. 2010)

(rejecting Raleigh's argument that his plea was involuntary when he provided inadequate explanation as to how improper pressure or coercion influenced his decision).

Copeland also argues that his attorney provided ineffective assistance in connection with his sentence, asserting that his attorney should have argued that a victim advocate, not the victim, authored the victim-impact statement; the state misread a portion of the victim-impact statement to the district court; and "[his attorney] could show victim testimony and charges against [Copeland] that directly contradict each other." Copeland argues that his attorney indicated that she may have lost some of "seven letters to the Court in support of Mr. Copeland" and that this showed how "disconnected [she] was to [his] case." Without record support, Copeland maintains that his attorney failed to communicate with him between the plea and sentencing hearings and that a college intern prepared a PowerPoint presentation given to the district court at sentencing. But Copeland fails to explain how such conduct overcomes the presumption that his attorney's performance was reasonable. *See Vang*, 847 N.W.2d at 266. This is particularly true in light of his attorney's zealous representation at the sentencing hearing, when she argued for a downward dispositional departure. The record reveals that the attorney displayed a thorough understanding of Copeland's case and his troubled past; family conflict about his sexual orientation; extensive support from family and friends; steady employment; psychosexual-evaluation results, indicating that Copeland is not a pedophile; and recent involvement in therapy. Copeland's mere assertions about his attorney's ineffectiveness are unpersuasive, particularly in light of the "strong presumption" that we "must indulge . . . that counsel's conduct falls within the wide

5

range of reasonable professional assistance" or, said another way, that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quotation omitted).

*Requested Downward Dispositional Departure*

The presumptive sentences for Copeland's offenses of second-degree criminal sexual conduct were stayed sentences of 21 months and 27 months,[1] and the presumptive sentence for Copeland's offense of third-degree criminal sexual conduct was an executed sentence of 70 months, the middle of the 60–84 month presumptive range. The district court sentenced Copeland to 60 months' imprisonment, the bottom of the presumptive range. Copeland challenges the district court's denial of his motion for a downward dispositional departure as to this sentence. He argues that the district court abused its discretion in light of his remorse; his low-to-moderate risk of reoffending; the absence of evidence of him reoffending; his suppressive religious upbringing; and his assertion that he "has begun to reconcile himself with his sexuality and has transcended his attraction to his younger cousin," which he argues that he demonstrated by having a homosexual relationship with an adult man, noted in the presentence investigation report. The record reflects that the district court carefully considered all of Copeland's arguments.

Appellate courts review the district court's refusal to depart for an abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006). "[E]ven if there are grounds that would justify departure," we "will not ordinarily interfere with a sentence

---

[1] The district court executed Copeland's 21-month and 27-month sentences on Copeland's request.

6

falling within the presumptive sentence range." *Id.* (quotation omitted). "Departures from the presumptive sentence are justified *only* when substantial and compelling circumstances are present in the record." *State v. Jackson*, 749 N.W.2d 353, 360 (Minn. 2008). "[I]t would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This case is not such a rare case. We conclude that the district court did not abuse its discretion by refusing to grant Copeland's request for a downward dispositional departure.

### Pro Se Arguments

Copeland argues in his pro se supplemental brief that the district court erred by ordering him to complete conditional release after he completed his sentences of incarceration and supervised release. He argues that the court retroactively applied a new rule announced in *State ex rel. Peterson v. Fabian*, 784 N.W.2d 843 (Minn. App. 2010), to his November 2002, November 2003, and November 2008 offenses. Copeland's argument lacks merit because the court did not apply *Peterson*. The court instead ordered Copeland to serve "10 years on conditional release, minus any time served on supervised release." Consequently, we do not reach Copeland's *Blakely–Apprendi* argument that he premises on his belief that, in *Peterson*, we announced a new rule that the district court applied retroactively in this case.

Copeland also argues pro se that the district court erred by requiring him to register as a predatory offender for ten years when "in reality it is lifetime registration" because, before he pleaded guilty to third-degree criminal sexual conduct, he pleaded guilty to two second-degree criminal-sexual-conduct counts. But the district court did not

impose a lifetime-registration requirement; it imposed a registration requirement as a condition of his ten-year conditional-release term. We decline to address his argument because doing so would amount to an advisory opinion concerning error that did not occur. *See Schowalter v. State*, 822 N.W.2d 292, 298 (Minn. 2012) ("[W]e do not issue advisory opinions.").

Copeland also argues pro se that the prosecutor "changed the dates of all eleven counts" after sentencing and that the district court erred by increasing the severity of his "case" by applying the *Hernandez* method of sentencing. These arguments are unpersuasive. The dates in the only complaint in the record, filed about nine months before sentencing, display no signs of alteration. And, regardless, Copeland's convictions were based on his guilty pleas, not the complaint. *See Rickert v. State*, 795 N.W.2d 236, 243 (Minn. 2011) ("Like a verdict of a jury[, a guilty plea] is conclusive. More is not required; the court has nothing to do but give judgment and sentence." (quotation omitted)). And, as to the district court's method of sentencing, Copeland fails to support his argument with citations to the record or legal authority. *See State v. Sterling*, 834 N.W.2d 162, 177 n.3 (Minn. 2013) ("To the extent that Sterling's assertions in his pro se brief are intended to raise other claims without citation to the record or legal authority, we conclude that those claims, whatever they may be, fail.").

**Affirmed.**